The opinion of the Court was delivered hy
Poci-ns, J.
Plaintiffs, as heirs of the late George M. Heroman, seek to annul the sale of a valuable piece of property situated in Baton Rouge, formerly owned by their father, and adjudicated at a sheriff’s sale to the executors of John Bird, of Missouri, by whom it was sold to the Trustees of the Louisiana Institute for Deaf and Dumb, now the actual possessors.
*808 The suit is brought against the Trustees of the Institute and against the executors. The latter were called in warranty by the Trustees, an.l in their turn, they called in warranty Mrs. Celestine Bonning, widow G. M. Heroman.
Mrs. Bonning, instead of defending the titles under controversy, joined plaintiffs in assailing their validity and in their prayer to restore the property to the Heroman succession.
The issues ’raised by the pleadings are numerous, and the facts underlying them very complicated.
We state the following as the important features of the controversy :
On the 7th of May, 1856, G. M. Heroman executed in favor of John Bird, of Missouri, his three promissory notes, maturing respectively in one, two and three years, amounting together to $12,000, and secured by mortgage on the property now in litigation.
G. M. Heroman died in 1801, leaving a surviving widow and five minor children, whose mother was qualified as the natural tutrix. In 1863, widow G. M. Heroman married John Bonning, without convoking a family meeting, so as to be retained in the tutorship of her children.
On the 28th of April, 1865, executory process was instituted by John Bird on the three notes held by him, against the “ heirs of Q. 31. Hero-man,” causing the required notices to be served on Mrs. Celestine Bonning, natural tutrix, and John Bonning as tutor of the Heroman minors.
On the 6th of June, 1865, pending the executory process, a family meeting, convoked in behalf of these minors, reinstated Mrs. Bonning to the natural tutorship of her children, “ nunojpro time,” and dispensed her from furnishing the bond required by law.
In a document filed June 10,1865, bearing no date, Mrs. Bonning as tutrix, and John Bonning as co-tutor, acknowledged to have received all the notices required by law, in the executory process instituted as above set forth.
The property thus seized was offered for sale on July 1st, 1865, and for want of a sufficient bid, was re-advertised for sale on a twelvemonths’ bond. It was adjudicated on the 18th of July of that year, for $13,000, to Mrs. Bonning, who, being unable to furnish the required bond, paid $1,000 cash, and executedfor the balance, three notes, maturing in one, two and three years, secured by mortgage and vendor’s lien on the property sold, which settlement was accepted by the seizing creditor.
On the 21st of June, 1866, a family meeting, convoked for the purpose, sought to ratify the purchase of July 18th, 1865, in the interest of the Heroman minors, and to make them liable for the notes executed by their mother.
*809 On the 13th of March, 1867, suit was filed against Mrs. Bonning, personally and as tutrix for her minor children, and against one of the heirs who had become of age, for the purpose of .enforcing payment of the notes executed by Mrs. Bonning on the 18th of July, 1865.
' Judgment was rendered on April 8, 1869, and was executed in September, 1878, resulting in the adjudication of the property for $10,000, to the executors of John Bird, who, in the meantime, had died.
This suit was instituted on the 19th of October, 1879, by four of the five Heroman heirs, who allege the absolute nullity of the proceeding's and the sale made in the executory process issued on April 28th, 1865, and of all the proceedings predicated on, or purporting to ratify, said sale.
The defendant Trustees maintain the legality of their title and that of the Bird executors, their vendors, whom they call in warranty, and in case of eviction, they pray for judgment against their warrantors for $2,500, amount paid them on account of the purchase price, and also for $2,380, amount disbursed by them for improving the property.
For defense, the executors, as defendants and as warrantors, urge the legality of all the proceedings under which they acquired title, and claim that all irregularities, if any, which may have crept in their executory process of April, 1865, have been fully cured by the acts of the family meetings of June, 1865, and of June, 1866, and by the certificate or admission of Mrs. Bonning, tutrix, filed June-10, 1865, and they finally urge, in bar of plaintiff’s recovery, prescription of ten, five, four and one years.
This appeal is prosecuted by plaintiffs from an adverse judgment by the District Judge, who has given no reasons in support of his decree, and thus fails to inform us which of the numerous defenses prevailed in his opinion.
We shall first direct our attention to the validity of the proceedings inaugurated on the 28th of April, 1865, and culminating in the adjudication of the property to Mrs. Bonning.
If those proceedings be found regular, valid and binding, the case is with the defendants, without the necessity of investigating all the subsequent proceedings which were predicated thereon.
If, on the other hand, those proceedings are found to be virtually irregular and illegal, and the sale made on July 18, 1865, be found in consequence an absolute nullity, and not ratified by any of the subsequent proceedings invoked as such, it is evident that plaintiffs have made out their case.
A careful perusal of the statement of the proceedings which we have made above, and which is taken without comment from the record, will expose to the legal mind several wanton violations of the rules of *810 practice absolutely required under our laws; and will disclose the startling fact that the executory process of April 28, 1865, was literally carried on by a plaintiff without defendants.
By contracting her second marriage, without the authorization of a family meeting to retain her as tutrix, Mrs. Bonning was ipso facto removed from the tutorship, (C. C. Art. 254) and had no more authority to represent her children in legal proceedings than any stranger or even plaintiff himself. 32 An. 51 ; 22 A. 21.
It follows, therefore, that the notices served on her as tutrix, and on her husband as co-tutor, had no more legal effect than if served on any stranger or imaginary being.
It is, therefore, safe to conclude that the executory process, as carried on, lacked the notice or demand to pay required by Art. 735 of the Code of Practice, and also the indispensable notice of seizure, and all the other notices required by law.
It has often been held that these notices amount in legal importance to citation in an ordinary process, in default of which all other proceedings, including the judgment, are stricken with absolute and incurable nullity.
It is to be noted that the petition for executory process is absolutely silent on the subject of any interest of Mrs. Bonning in and to the property proceeded against; no process is asked against her personally, and therefore none was served.
These considerations clearly point to the nullity of the sale made under such anomalous proceedings.
But defendants call our attention to the action of the family meeting of June 6, 1865, reinstating Mrs. Bonning, nunc pro tune, in the tutorship of her children, and to her admission that she had received all the notices required by law; and their counsel are seemingly serious in arguing that such proceedings could cure, not only relative nullities, but even an absolute nullity, such as would affect a judgment rendered without citation on the defendant.
That the law which requires the solemn action of a family meeting to restore a mother to the functions of tutorship, which she had forfeited by contracting a second marriage, without complying with the rules of law made conditions precedent to her right of retaining her natural tutorship, does not contemplate that the action of such family meeting may, in any contingency, have a retroactive effect, is an' axiom which cannot be strengthened by reasoning.
The very necessity of the family meeting excludes the idea that its action can retroact so as to legalize acts done without the authority, nay, in contravention of law. The power of the family meeting thus *811 composed could provide only a dative tutorship, and could not reinstate the tutorship by nature.
Defendants next fall back on the action of the family meeting held on the 21st of June, 1866, and hold up this proceeding as a full and legal ratification of the sale of July 18, 1865.
A careful reading of the petition convoking this family meeting, and of the proceedings of the meeting, leaves the mind in doubt as to the true object of the call and of the matters passed upon by the meeting.
It is in fact easier to define what was not asked and what was not accomplished, than to affirmatively explain the end proposed or attained.
We conclude that the family meeting was not convoked for the purpose of ratifying the sale of July 18th, 1865. On the contrary, the petition refers to a suit filed and a judgment rendered in November, 1865, for the purpose of avoiding that sale and decreeing that the property yet belonged to the Heroman succession ; and concludes with the prayer that the family meeting should assume the latter position, and treat the purchase made by Mrs. Bonning on July 18,1865, as made for the succession, and that the mortgage executed by her be assumed as binding on the succession and heirs. The recommendations of the family meeting, which were homologated by the court, conform with the prayer of the petition, and assume the notes and mortgage created by Mrs. Bonning as binding on the heirs.
We may state, in this connection, that the suit filed on May 13, 1867, against Mrs. Bonning personally, and against the Heroman heirs, was predicated upon the action of this family meeeting and must abide its fate.
Now, in treating with the sale of July 18th, 1865, the family meeting was compelled to consider it either as legal and binding, or as absolutely null and void. Its legality depended upon the acts held up as confirmatory by defendants. Its nullity flowed from the want of defendants in the executory process, unless cured by the alleged ratification.
If valid, it was a purchase made on credit by a married woman, living under the regime of the legal community, and the property passed to the community of John Bonning and wife. As such it completely divested the previous community of Heroman and wife, and clearly could not he treated as the property of the first and dissolved community, and much less as that of the succession of Geo. M. Heroman. If, on the other hand, the nullity of the sale resulting from the want of parties defendants was not cured, as we have shown above, by the family meeting of June 6, 1865, and proceedings had there *812 under, the sale being absolutely null, it could not be ratified. Nothing can flow from nothing. 4 An. 229.
The act of the family meeting of June, I860, was, therefore, illegal, null and void, and strikes all proceedings in the suit of May, 1867, with incurable nullity.
Our conclusion is, therefore, that the succession of Goo. M. Heroman has never been divested of its title to the property in controversy, and that the parties must be restored to the position which they occupied previous to the 28th of April, 1865. The plea of prescription set up by defendants, warrantors, is also untenable.
We have purposely avoided to express an opinion on the plea of prescription of five years, interposed by plaintiffs, in bar of any rights claimed under the notes of May, 1856. We hereby reserve to the executors of Bird any and all rights which they may claim under these notes against the succession and heirs of Geo. M. Heroman, to whom we decree the property.
The Louisiana Institute being purchasers in good faith from Bird’s estate, they must recover judgment against the latter, for the sum of $2,500, amount paid on account of the purchase price, and the additional sum of $2,380, disbursed for improvements on the property, without prejudice to the rights, if any, of the executors of John Bird to claim the latter amount from the heirs of Heroman.
The conclusion which we have reached precludes the necessity of passing upon the numerous other issues raised in the pleadings and several bills of exception reserved during the trial, a solution of which would have stretched this already lengthy opinion into unpardonable dimensions.
It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court be annulled, avoided and reversed ; and proceeding to render the judgment which should have been rendered, it is ordered, adjudged and decreed, that the proceedings in executory process instituted on April 28th, 1865, and the sale made thereunder on July 18th, 1865, and all the other proceedings predicated thereupon, and all proceedings intended and purporting to confirm and ratify said sale, and that the sale of November 16th, 1878, to the executors of John Bird, and the sale by them to the Institute for Deaf and Dumb, be and they are hereby all and severally declared null and void, and without effect; and that the property mortgaged by Geo. M. Heroman on the 7th of May, 1856, be decreed to be the property of his succession and community, to be liquidated according to law.
It is further decreed that the Trustees of the Louisiana Institute for Deaf and Dumb recover judgment against the executors of John Bird in the sum of twenty-five hundred dollars, received by them as part *813 of the purchase price, and the additional sum of twenty-three hundred and eighty dollars for improvements added by said Trustees to said property, without prejudice to the rights, if any, of said executors to claim the latter amount from the succession and heirs of G. M. Heroman, and that all costs in both Courts be paid by said executors, defendants and warrantors.